UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AURORA ALVARADO, | ) | Case No. CV 14-6317-JEM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On August 19, 2014, Aurora Alvarado ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on November 17, 2014. On April 6, 2015, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 21-year-old female who applied for Supplemental Security Income benefits on October 26, 2011, alleging disability beginning February 13, 2011.  (AR 11.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 26, 2011, the application date.  (AR 13.)

Plaintiff's claim was denied initially on April 13, 2012.  (AR 11.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joel B. Martinez on December 14, 2012 in Pasadena, California.  (AR 11.)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 11.) Vocational Expert ("VA") Elizabeth G. Ramos also appeared and testified at the hearing. (AR 11.)

The ALJ issued an unfavorable decision on February 8, 2013.  (AR 11-20.)  The Appeals Council denied review on June 24, 2014.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.   Whether the ALJ properly considered if Plaintiff meets or equals Listing 1.03.

2.   Whether the ALJ fully and fairly developed the record.

3.   Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

1   Substantial evidence means "'more than a mere scintilla,' but less than a
2   preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting
3   Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such
4   relevant evidence as a reasonable mind might accept as adequate to support a
5   conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation
6   omitted).

7   This Court must review the record as a whole and consider adverse as well as
8   supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).
9   Where evidence is susceptible to more than one rational interpretation, the ALJ's
10  decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599
11  (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole
12  and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"
13  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.
14  1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

15
16  The Social Security Act defines disability as the "inability to engage in any
17  substantial gainful activity by reason of any medically determinable physical or mental
18  impairment which can be expected to result in death or . . . can be expected to last for a
19  continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),
20  1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to
21  determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

22  The first step is to determine whether the claimant is presently engaging in
23  substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the
24  claimant is engaging in substantial gainful activity, disability benefits will be denied.
25  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether
26  the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at
27  746.  An impairment is not severe if it does not significantly limit the claimant's ability to
28  work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment

3

is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

4

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since October 26, 2011, the application date.  (AR 13.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: history of Legg-Calve-Perthes disease, status post surgical fixation, status post right hip hardware removal debridement and femoral osteoplasty and chondro-osteoplasty and obesity.  (AR 13-15.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (AR 15.)

The ALJ then found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> . . . she must have a sit/stand option for approximately 10 minutes,
> every 30 minutes.  Further, she is limited to frequent postural activity,
> except she is limited to occasional climbing and is precluded from
> working on uneven terrain.  Claimant has no other significant
> limitations except she is precluded from workplace hazards such as
> dangerous machinery and unprotected heights, and from concentrated
> exposure to respiratory irritants such as dust, fumes and gas.

(AR 15-18.)  In determining the above RFC, the ALJ made an adverse credibility determination.  (AR 17.)

At step four, the ALJ found that Plaintiff has no past relevant work performed at a substantial gainful activity level.  (AR 13, 18.)  The ALJ, however, also found that, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Claimant can perform, including the jobs of counter clerk and ticket clerk.  (AR 18-19.)

1    Consequently, the ALJ found that Claimant was not disabled, within the meaning
2    of the Social Security Act.  (AR 19.)

3                                    **DISCUSSION**

4         The ALJ decision must be affirmed.  The ALJ properly determined that Plaintiff
5    does not meet or equal a listed impairment.  The ALJ did not fail to fully develop the
6    record.  The ALJ properly discounted Plaintiff's subjective symptom allegations.

7         The ALJ's RFC is supported by substantial evidence.  The ALJ's nondisability
8    determination is supported by substantial evidence and free of legal error.

9    **I.    THE ALJ PROPERLY CONCLUDED THAT PLAINTIFF
          DOES NOT MEET OR EQUAL ANY LISTING**

10        At step three of the sequential process, the ALJ found that Claimant does not
11   have an impairment or combination of impairments that meets or medically equals the
12   severity of one of the listed impairments.  (AR 15.)  Plaintiff contends that this finding is
13   insufficient and that the medical evidence of record established that she meets or equals
14   the criteria for Listing 1.03.  The Court disagrees.

15        **A.    Relevant Federal Law**

16        Social Security regulations provide that a claimant is disabled if he or she meets
17   or medically equals a listed impairment.  Section 416.920(a)(4)(iii) ("If you have an
18   impairment that meets or equals one of listings . . . we will find that you are disabled");
19   Section 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is
20   equal to a listed impairment(s), we will find you disabled without considering your age,
21   education, and work experience").  In other words, if a claimant meets or equals a listing,
22   he or she will be found disabled at this step "without further inquiry."  Tackett v. Apfel,
23   180 F.3d 1094, 1099 (9th Cir. 1999).  There is no need for the ALJ to complete steps
24   four and five of the sequential process.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir.
25   2001).

26        The listings in Appendix 1 describe specific impairments considered "severe
27   enough to prevent an individual from doing gainful activity, regardless of his or her age,

28

                                          6

1  education, or work experience." Section 404.1525. An impairment that meets a listing
2  must satisfy all the medical criteria required for that listing. Section 404.1525(c)(3). An
3  impairment cannot meet a listing based only on a diagnosis. Section 404.1525(d).
4  Medical equivalence will be found if the impairment "is at least equal in severity and
5  duration to the criteria of any listed impairment." Section 404.1526(a). Medical
6  equivalence is based on symptoms, signs and laboratory findings. Section
7  404.1529(d)(3).

8      The Ninth Circuit in Lewis, 236 F.3d at 512, held that an ALJ must evaluate the
9  relevant evidence before concluding that a claimant's impairments do not meet or equal
10  a listing. The Court further declared, "A boilerplate finding is insufficient to support a
11  conclusion that a claimant's impairments do not do so." Id. Lewis cited as authority
12  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990), a case relied on heavily by Plaintiff
13  here. Lewis, however, distinguished Marcia by noting that Marcia "simply requires the
14  ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not
15  specify that the ALJ must do so under the heading 'Findings.'" Lewis, 236 F.3d at 513.
16  Lewis found that the ALJ sufficiently discussed and evaluated the evidence before
17  concluding that the claimant did not meet a listing. Lewis also held that the ALJ's failure
18  to discuss equivalence in that case was not reversible error because the claimant failed
19  to offer any theory, plausible or otherwise, how his impairments combined to equal a
20  listing impairment and because the claimant pointed to no evidence his combined
21  impairments equal a listing. Id.

22      **B.    Analysis**

23      To begin, as in Lewis, the ALJ here sufficiently discussed and evaluated all
24  relevant evidence before concluding that Plaintiff did not meet or equal a listing. The
25  fact that he did so in part in his RFC assessment (AR 15-18) as well as in his step three
26  finding (AR 15) is immaterial. Lewis, 236 F.3d at 513 (Marcia "simply requires an ALJ to
27  discuss and evaluate evidence that supports his or her conclusions; it does not specify
28  that the ALJ must do so under the heading 'Findings'"); Kruchek v. Barnhart, 124 Fed.

7

1  Appx. 825, 827 (9th Cir, 2005) (adequately analyzed evidence elsewhere in decision);

2  Harris v. Astrue, 2009 WL 801347*7 (N.D. Cal.) (discussion and evaluation of evidence

3  at step four supported ALJ's step three conclusion that impairments did not meet or

4  equal Listing 1.04; "Lewis does not require that support for the ALJ's conclusion be

5  placed in a specific section of the report").

6        The ALJ here did not make a boilerplate finding.  The ALJ found that no medical

7  source has opined that Claimant's impairments meet or equal a listing.  (AR 15.)  He

8  also cited a State agency reviewing psychologist who specifically found that Claimant's

9  mental impairments do not meet or equal a listing.  (AR 15.)  The ALJ further stated that

10  he failed to find substantial medical evidence that Claimant's impairments meet all the

11  requirements of any listing.  (AR 15.)  He also noted that Claimant bears the burden of

12  proof to establish she meets or equals a listing.  (AR 15.)  Other medical evidence

13  discussed in the ALJ's RFC assessment further supports the ALJ's step three finding.

14  See discussion below.

15        Nonetheless, Plaintiff asserts that she meets or in combination with her other

16  impairments equals Listing 1.03.  That listing provides as follows:

17              1.03.  Reconstructive surgery or surgical arthrodesis of a major

18          weight-bearing joint, with inability to ambulate effectively, as defined in

19          1.00B2b, and return to effective ambulation did not occur, or is not

20          expected to occur, within 12 months of offset.

21  In 1.00B2b, examples of the inability to ambulate effectively include "the inability to walk

22  a block at a reasonable pace on uneven surfaces."  The ALJ's RFC provides that

23  Plaintiff "is precluded from walking on uneven terrain."  (AR 15.)  On that basis, Plaintiff

24  alleges that she meets Listing 1.03 or in combination with her other impairments equals

25  it.

26        An impairment that meets a listing, however, must satisfy all the medical criteria

27  required for that listing.  20 C.F.R. § 404.1525(c)(3).  That requires meeting all the

28  requirements for establishing the inability to ambulate effectively.  These include:

*b. What We Mean By Inability To Ambulate Effectively*

(1) *Definition.*  Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  <u>Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities</u> (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) *To ambulate effectively.*  Individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surface, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(Emphasis added.)

Plaintiff plainly does not meet the criterion in Listing 1.03 of insufficient lower extremity functioning to permit independent ambulation "without the use of a hand-held assistive device(s) that limits the functioning of <u>both</u> upper extremities."  (Emphasis added.)  Here, Plaintiff had right hip surgery at age 8 to limit femoral head slippage.  (AR

15, 251.)  In April 2011, Plaintiff sought treatment for right hip pain.  After examinations revealed positive impingement, she underwent surgical intervention on November 21, 2011 for hardware removal, labral debridement and osteoplasty.  (AR 16.)

There were no significant complications with this surgery.  (AR 16.)  By February 2012, the only clinical abnormality identified at a consulting examination was some residual tenderness in the right hip.  (AR 16, 283).  Dr. Azizollah Karamlou, the internist who conducted the examination, found range of motion of hips to be grossly normal bilaterally (AR 16, 283).  He also found no gait abnormalities of limitations, finding that the Claimant "needs no assistance devices for ambulation."  (AR 16, 282.)  He assessed her with a medium work RFC, capable of sitting/standing/walking for six hours in an eight hour workday, but not able to walk on uneven terrain.  (AR 16, 284.)  In March, 2012, she denied hip pain, reported she can sit for long periods of time without pain and her gait was normal.  (AR 16, 313-314.)  Pain management physicians also reported a normal gait at examinations in March, May and June 2012.  (AR 16, 318, 320, 323.)  The ALJ found that Claimant's right hip symptoms largely resolved within 12 months of onset, following surgical intervention in November 2012.  (AR 16.)

Plaintiff, moreover, admits that she only used crutches for six weeks.  (JS 4:23-24, 261.)  Plaintiff also cites to a report indicating she will need a cane (JS 5:5) which would not implicate both lower extremities or require use of both hands.  At the December 14, 2012 hearing, Plaintiff admitted she does not require use of a cane more than occasionally:

Q:    Do you need a cane when you walk?

A:    Sometimes I do.

Q:    Well, is that a no?

A:    Maybe, it depends.

Q:    Well, do you have a cane with you?

A:    Not with me.

Q:    Okay, so that to me infers you don't need a cane?  Is that right?

1      A:      Basically.

2  There is no medical evidence in the record that would establish that Plaintiff's hip

3  impairment meets all of the criteria required for Listing 1.03.

4      The only evidence Plaintiff cites is her own complaints of hip pain to physicians.

5  (AR 233, 252, 254, 256, 313-314, 326, 361, 362.)  As the Commissioner notes, however,

6  Congress expressly prohibits granting disability benefits based on a claimant's

7  subjective complaints.  41 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or

8  other symptoms shall not alone be conclusive evidence of disability"); see also 20 C.F.R.

9  § 416.929(a) (an ALJ will consider a claimant's statements about pain or symptoms but

10  those statements will not alone establish disability).  Additionally, the ALJ properly

11  discounted the credibility of Plaintiff's subjective symptom allegations, as discussed

12  below.

13      Plaintiff also contends that she medically equals Listing 1.03 in combination with

14  "her other severe impairments of fibromyalgia and obesity."  (JS 7:10-12.)  The ALJ,

15  however, did not find that fibromyalgia and obesity were severe impairments.  (AR 13.)

16  Indeed, the ALJ found that fibromyalgia was not even a medically determinable

17  impairment.  (AR 13-14.)  He also found that there was no evidence that Plaintiff's

18  obesity limited her ability to sit, stand, walk, her range of motion and her ability to move

19  about.  (AR 16.)  He concluded that he cannot say that "the Claimant's weight, either

20  separately or in combination with her other impairments would preclude her from

21  performing a range of medium exertion."  (AR 16.)  Thus, Plaintiff is incorrect in asserting

22  that the ALJ never considered the effects of Plaintiff's combined impairments.

23      Plaintiff, who has the burden of proof at step three, Parra, 481 F.3d at 746, failed

24  to carry her burden to establish that her impairments meet or equal Listing 1.03.  None

25  of the evidence accepted by the ALJ establishes that any impairment, singly or in

26  combination with other impairments, meets or equals Listing 1.03.  Plaintiff does not

27  explain how a claimant with a residual functional capacity that would permit medium

28  work could be found disabled at step three of the sequential process.  The ALJ's step

three finding that Plaintiff does not have an impairment or combination of impairments that meets or equals any listed impairment, including Listing 1.03, is supported by substantial evidence.  There was no error.

## II.   THE ALJ FULLY AND FAIRLY DEVELOPED THE RECORD

Plaintiff contends that the ALJ failed in his duty to fully develop the record because he failed to obtain records from Children's Hospital of Los Angeles ("CHLA") that may have established a diagnosis of fibromyalgia.  The Court disagrees.

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the Claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d at 441, 443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The ALJ's duty to develop the record exists even when the claimant is represented by counsel.  Tonapetyan, 242 F.3d at 1150. Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

As already noted, the ALJ determined that Plaintiff's alleged fibromyalgia has not been medically determined.  (AR 14.)  More specifically, the ALJ noted some diagnoses of fibromyalgia and even treatment for it.  (AR 13.)  A report in April 2011 indicated Claimant had undergone a rheumatology examination and the rheumatologist was "suspicious for fibromyalgia."  (AR 13.)  The ALJ, however, found no evidence that Plaintiff had ever been evaluated according to the tender point criteria established by the American College of Rheumatology for establishing the presence of fibromyalgia.   (AR 14.)

Plaintiff does not disagree but believes Children's Hospital of Los Angeles which tested and diagnosed Plaintiff with fibromyalgia may have done tender point testing.

Plaintiff asserts that the ALJ should have undertaken to obtain CHLA's records to ascertain whether trigger point testing was done.

There are several problems with this argument.  First, Plaintiff's contention is speculative.  There is no evidence to suggest any trigger point testing was done at CHLA.  Second, Plaintiff's contention would shift her own burden of proving disability on the ALJ.  The law in this Circuit is clear that Plaintiff "carries the initial burden of proving a disability" and "failure to prove disability justifies a denial of benefits."  Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005).  Nothing prevented Plaintiff and/or her representative from obtaining her medical records from Plaintiff.

Third, even if the ALJ obtained the medical records and the records indicated trigger point testing that would establish fibromyalgia, all that would establish is that the ALJ's finding that fibromyalgia is not medically determinable is erroneous.  A finding that Plaintiff has the impairment of fibromyalgia does not establish the severity of the impairment or what limitations exist.  Dr. Karamlou, despite noting Plaintiff's fibromyalgia, assessed a medium work RFC that the ALJ adopted.  (AR 284.)  Thus, any error, if there was one, in diagnosing fibromyalgia was harmless.  Stout v. Comm'r of Soc. Sec. Adm., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (harmless error is one inconsequential to the nondisability determination).

The ALJ did not fail to develop the record fully.

## III.   THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S SUBJECTIVE SYMPTOM ALLEGATIONS

Plaintiff contends that the ALJ erred in discounting her subjective symptom allegations.  The Court disagrees.

### A.   Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must

consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

**B.    Analysis**

In determining Plaintiff's RFC, the ALJ stated that he was unable to give her subjective symptom allegations "full weight." (AR 17.) Because the ALJ did make any finding of malingering, he was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's credibility. Smolen, 80 F.3d at 1283-84. The ALJ did so.

1    First, the ALJ found that Plaintiff's subjective symptom allegations are inconsistent

2  with the objective medical evidence.  (AR 17.)  Specifically, the ALJ found a lack of

3  medical evidence indicating Plaintiff's impairments were as disabling as she claims and

4  there "simply is not enough objective evidence to make her allegations readily

5  believable."  (AR 17.)  An ALJ is permitted to consider whether there is a lack of medical

6  evidence to corroborate a claimant's alleged pain symptoms so long as it is not the only

7  reason for discounting a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676, 680-81

8  (9th Cir. 2005).  Plaintiff did not challenge this reason of the ALJ for discounting her

9  credibility other than to say it cannot be the only basis for doing so.  The ALJ, however,

10  offers additional reasons for discounting Claimant's credibility which are discussed

11  below.

12    Second, the ALJ found that Plaintiff's inconsistent statements and actions

13  undermine her credibility.  (AR 17.)  An ALJ may consider such inconsistencies in

14  evaluating credibility.  Light v. Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997);

15  Thomas, 278 F.3d at 958-59.  Here, the ALJ observed that Claimant continued to work

16  part-time well after the alleged onset date which is not consistent with disability.  (AR

17  17.)  She also reported to a treating medical source in March, 2012 that she was a full-

18  time student and only had occasional hip pain, also inconsistent with her subjective

19  symptom allegations.  (AR 17.)  She advised her pain management specialist in June,

20  2012 that she had joined a gym and she was planning to visit relatives in Mexico.  (AR

21  17.)  She claimed she only went to the gym a few times but subsequently told her

22  acupuncturist in September, 2012 that she had continued to exercise and swim at her

23  gym.  (AR 17.)  Plaintiff does not address the inconsistencies in her statements and

24  conduct cited by the ALJ.

25    There are other inconsistencies.  She told a treating source in 2012 that she was

26  doing well, was applying for a job with Citibank and canceled a psychiatric appointment

27  because she could not get time off work.  (AR 17.)  In 2011, she told her psychiatric

28  source she had been busy and unable to return her calls.  (AR 18.)  Her limited

15

psychiatric treatment was "spotty" and inconsistent with her alleged symptoms.  (AR 14-15, 17-18.)  An ALJ may consider conservative treatment in evaluating credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also found Plaintiff's daily activities to be inconsistent with disabling limitations, which also is a legitimate consideration in evaluating credibility.  Bunnell, 947 F.2d at 345-46.  Here a third party in 2012 reported Claimant spends much of her day at school and work.  (AR 18.)  Even third party friend Maria Cruz acknowledged Plaintiff remains capable of a wide range of activities of daily living, including shopping, going out to work and for groceries.  (AR 18.)  Plaintiff contends that working part time, joining a gym and being a full time student does not mean she can work full time but they do suggest Claimant has greater functional abilities than alleged.  See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff disputes the ALJ's adverse credibility finding but again it is the ALJ who has the responsibility to resolve ambiguities in the record.  Andrews, 53 F.3d at 1039. Where the ALJ's interpretation of the record evidence is reasonable as it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

The ALJ rejected Plaintiff's subjective symptom testimony for clear and convincing reasons supported by substantial evidence.

* * *

The ALJ's RFC is supported by substantial evidence.  The ALJ's nondisability determination is supported by substantial evidence and free of legal error.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED:   May 26, 2015                                    _/s/ John E. McDermott_
                                                        JOHN E. MCDERMOTT
                                                        UNITED STATES MAGISTRATE JUDGE